IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Tammy Buckman,<br><br>                Plaintiff,<br>vs.<br><br>Louis DeJoy, Postmaster General,<br><br>                Defendant. | Civil Action No. 5:22-cv-1019-CMC<br><br>**ORDER** |

Through this action, Plaintiff Tammy Buckman ("Plaintiff" or "Buckman") seeks recovery from Defendant Louis DeJoy, the Postmaster General, for alleged discrimination during her employment at the United State Postal Service ("USPS"), in violation of the Rehabilitation Act, the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964. ECF No. 16 (Second Amended Complaint). Plaintiff claims discrimination based on age and sex, retaliation and hostile work environment under each statute, and failure to accommodate. The matter is before the court on Defendant's motion for summary judgment. ECF No. 57. Plaintiff filed a response in opposition. ECF No. 61. Defendant replied. ECF No. 65.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B), DSC, this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report"). On July 23, 2024, the Magistrate Judge issued a Report recommending Defendant's motion be granted in part and denied in part. ECF No. 76. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Defendant filed objections (ECF No. 83) and Plaintiff replied (ECF No. 86).

1. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

2. **Factual Background**[1]

The undisputed facts are fully detailed in the Report. ECF No. 76 at 1-9. As portions of the Report, namely the recommendation to grant summary judgment on certain claims, were not objected to, the court will not recite the full factual background again here. Facts necessary to address Defendant's objections and Plaintiff's reply are found below. An overview of Plaintiff's history with the USPS follows.

---

[1] The facts are taken in the light most favorable to the non-moving party, Plaintiff.

2

Plaintiff began her employment with USPS in 2011, at the Post Office in Dixiana, South Carolina. She later transferred to the Assembly Street Post Office in Columbia, South Carolina, and in 2018, to the Orangeburg, South Carolina USPS facility. She was just over 50 years old when she transferred to Orangeburg.

Plaintiff's first disciplinary action was initiated in January 2019, for failing to follow instructions. ECF No. 57-3. A "letter of warning" was issued by USPS on January 31, 2019, noting "future deficiencies will result in more severe disciplinary action being taken against you. Such action may include removal from the Postal Service." ECF No. 57-4 at 1. In August 2019, another disciplinary action recommending a 14-day suspension was signed by Plaintiff's supervisor. ECF No. 57-5. Plaintiff was suspended for 14 days from September 3, 2019, to September 17, 2019. ECF No. 57-6.[2] On December 20, 2019, USPS issued a letter notifying Plaintiff she had been absent without leave since December 3, 2019. ECF No. 57-8.[3]

In 2020, Plaintiff requested Equal Employment Opportunity ("EEO") dispute resolution via "Pre-Complaint Counseling," complaining of actions of her co-workers and supervisor at the Orangeburg Post Office. ECF No. 57-12. The parties participated in mediation, resulting in an agreement that management "agrees to support any E-Reassign request from Counselee and

---

[2] This suspension was reduced to a seven-day "paper suspension" as part of an arbitration agreement dated February 20, 2020. ECF No. 57-7.

[3] The letter required Plaintiff to report for a mandatory interview on December 27, 2019, and provide documentation supporting her absence. The record does not indicate whether Plaintiff appeared or provided documentation.

3

Management also agrees to approve any E-Reassign request from Counselee to transfer." *Id.* at 8. In December 2020, Plaintiff requested EEO compliance review, asserting this agreement was breached. *Id.* at 11. However, the EEO compliance specialist determined management had not breached the agreement because they had not received a request for transfer from any other post office, and noted the "settlement agreement did not guarantee a transfer to another office . . . to date the Orangeburg Post Office officials have not received a request to support or approve an eReassign transfer request for you." *Id.* at 13.

Plaintiff received another notice of 14-day suspension on October 27, 2020, to be served between November 21 and December 4, 2020. ECF No. 61-2. This suspension was for failure to follow instructions and being absent from work without permission from September 21-October 2, 2020. *Id.* at 1. On October 28, 2020, Plaintiff was involved in an altercation with Kimberly Dunbar, another clerk, and Plaintiff called the local police. ECF No. 57-9. The police declined to file a report as this was an internal matter. *Id.* Plaintiff received another 14-day suspension for unsatisfactory work performance and the incident with Clerk Dunbar. ECF No. 57-10. This suspension was reduced to a Letter of Warning. *Id.* at 1. On January 6, 2021, USPS suspended Plaintiff for seven days for unsatisfactory attendance, effective January 23, 2021 – January 29, 2021. ECF No. 57-11.

On October 30, 2020, Plaintiff contacted an EEO Dispute Resolution Specialist, complaining about her coworkers and management, and asserting age-based discrimination and retaliation based on her prior EEO filing. ECF No. 57-13. She completed an EEO Complaint of Discrimination on January 28, 2021, complaining of age-based and sex-based discrimination and

4

a hostile work environment. *Id.* at 7. The EEOC investigated and issued a Final Agency Decision on June 25, 2021, finding the evidence did not support a finding of discrimination as alleged, and closing the complaint with a finding of no discrimination. *Id.* at 44.

Plaintiff sustained a work-related injury to her right ankle and foot on March 23, 2021. ECF No. 57-14. She testified at deposition she was struck by a "pallet jack" or forklift with boxes on it, pushed by Clerk Dunbar. ECF No. 57-1 at 18-19. She went to Doctor's Care and was treated for ankle and foot injury and contusion with over-the-counter medication. ECF No. 57-15 at 2. A week later she returned to Doctor's Care for a follow-up visit and was treated with anti-inflammatory medication. *Id.* at 1. Both times her work status was listed as "restricted duty." *Id.* at 1-2.

As a result of this injury, Plaintiff received an initial offer of Modified Assignment (Limited Duty) by USPS on March 30, 2021. ECF No. 57-16. On April 1, USPS issued Plaintiff an "Absence Notification Letter/Request for Investigative Interview," noting the need for medical documentation due to Plaintiff's absence from work. ECF No. 57-18.[4] On April 6, Plaintiff's supervisor received an automated email from e-RMS-NOTIFICATION@usps.gov, noting a leave request for Tammy Buckman from April 6 to April 21, for a total of 184 hours.[5] ECF No. 61-8. On April 23, USPS sent Plaintiff a letter for a "job offer based on work restrictions" and requiring

---

[4] Another document noted Plaintiff averred she did not know about the investigational interview. ECF No. 57-22 at 14.

[5] Plaintiff's supervisor, Rosalind Sistrunk, testified Plaintiff called the 800 number to request this leave. ECF No. 61-20 at 35.

5

a response by April 29. On April 26, Plaintiff's supervisor issued a "Notice of Removal," informing Plaintiff she would be removed from the Postal Service no sooner than 30 days from receipt of the notice for "unsatisfactory attendance" for being absent from work duties from March 29-April 5 without permission and without providing documentation, and for "failure to follow instructions" to provide medical documentation regarding her absence and appear for an investigative interview.[6] ECF No. 57-19. Two Offers of Modified Assignments were issued on May 11 and May 13. Plaintiff declined the first because "the restrictions are different than what the doctor says." ECF No. 57-17 at 1. Plaintiff accepted the second offer, issued May 13. *Id.* at 3. Plaintiff indicated in her deposition her last day of employment with USPS was May 28, 2021. ECF No. 61-18 at 78.

Plaintiff, through the American Postal Workers Union, filed a grievance on June 6, 2021. ECF No. 57-20 (Grievance Summary). The grievance was denied as untimely filed and on the merits. *Id.* at 3-4.

On August 6, 2021, Plaintiff filed another EEO Complaint of Discrimination, alleging discrimination and retaliation based on age and disability. ECF No. 57-21. The matter was not resolved through mediation, and Plaintiff was informed she could file a request for formal investigation. *Id.* at 10. An investigation was undertaken, and an Investigative Report issued December 1, 2021. *Id.* at 14-45. On February 10, 2022, USPS issued its Final Agency Decision in

---

[6] The letter notified Plaintiff she had the right to file a grievance within fourteen calendar days of receipt. Tracking indicated the Notice was delivered to Plaintiff's mailbox on April 27, giving Plaintiff until May 11, 2021, to file a grievance. ECF No. 57-20 at 2.

Plaintiff's EEO case. ECF No. 57-22. It found the evidence did not support a finding Plaintiff was subjected to the alleged discrimination, and closed the complaint with a finding of no discrimination. *Id.* at 26. Plaintiff was notified she could file an appeal with the EEOC or file a civil action in the District Court. *Id.* at 26-27.

### 3. **The Instant Lawsuit**

Plaintiff filed suit in this court on March 30, 2022. ECF No. 1. The operative Second Amended Complaint was filed July 20, 2022, and alleges claims pursuant to: (1) ADEA Age discrimination; (2) ADEA Retaliation; (3) ADEA Hostile work environment; (4) Title VII Retaliation; (5) Title VII Hostile Work Environment; (6) Rehabilitation Act Failure to Accommodate; (7) Rehabilitation Act Hostile Work Environment; (8) Rehabilitation Act Retaliation; (9) Rehabilitation Act Discrimination.[7] ECF No. 16.

Defendant sought summary judgment on all causes of action. ECF No. 57. After full briefing, the Magistrate Judge recommends granting summary judgment on Plaintiff's Title VII claims for retaliation and hostile work environment; ADEA claims of discrimination and hostile work environment, Rehabilitation Act claim of hostile work environment, and Plaintiff's request for punitive damages. ECF No. 76. She recommends denying summary judgment on Plaintiff's claims of ADEA retaliation and Rehabilitation Act claims of discrimination, retaliation, and failure to accommodate, as well as whether Plaintiff may be entitled to front or back pay. *Id.*

---

[7] The claims are misnumbered in the Second Amended Complaint, as there are two claims marked "Third Cause of Action."

7

Defendant filed objections to the Report, asserting summary judgment should be granted on all claims, including the damages issue of whether Plaintiff is entitled to front or back pay. ECF No. 83 at 2. Plaintiff did not file objections, but replied to Defendant's objections. ECF No. 86.

## 4. Discussion

Because Plaintiff filed no objections to the portions of the Report recommending summary judgment on certain of Plaintiff's claims, the court has reviewed those sections of the Report for clear error.[8] Finding none, the court adopts the Report recommending summary judgment on Plaintiff's claims for ADEA discrimination (Claim 1); ADEA hostile work environment (Claim 3); Title VII retaliation (Claim 4); Title VII hostile work environment (Claim 5); Rehabilitation Act hostile work environment (Claim 7); and the claim for punitive damages. Those claims are dismissed with prejudice.

Defendant objected to the Report's recommendation to deny summary judgment on the following causes of action: (2) ADEA retaliation; (6) Rehabilitation Act failure to accommodate (8) Rehabilitation Act retaliation; and (9) Rehabilitation Act discrimination, as well as the issue of front/back pay. ECF No. 83. Plaintiff replied that Defendant's objections repeat the same

---

[8] In Plaintiff's reply to Defendant's objections, she notes several times she "relies on the court's *de novo* review of the record, should it decide to do so, as a basis to deny summary judgment as to all of Plaintiff's claims." ECF No. 86 at 2 n.1. However, as explained above, the court reviews the Report only for clear error in the absence of objections. Plaintiff acknowledges this. *Id.* at 4 n.2 ("*Although not required to do so*, should the Court conduct a *de novo* review of the entire record, Plaintiff further requests the Court deny Defendant's Motion for Summary Judgment in its entirety.") (emphasis added).

8

arguments previously made and presented to the Magistrate Judge, and therefore are not proper objections. ECF No. 86. These objections are discussed further below.

### a. *Disability under Rehabilitation Act*

Defendant asserts Plaintiff's workplace injury was only temporary in nature, and thus insufficient to establish a disability under the Rehabilitation Act. Accordingly, Defendant contends Plaintiff was not disabled under the Rehabilitation Act and cannot survive summary judgment on her Rehabilitation Act claims for discrimination or failure to accommodate. Plaintiff argues she has established disability under the Rehabilitation Act. She points to Work Status reports from a physician detailing physical limitations and Job Offers provided by USPS after her injury containing altered work duties. ECF No. 86 at 5.

A Rehabilitation Act claim for discrimination or failure to accommodate must establish disability. A disability is defined as: (1) a physical or mental impairment that substantially limits one or more major life activities[9]; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (citing 42 U.S.C. § 12102(1)). The Rehabilitation Act defines "disability" as "(A) except as otherwise provided in subparagraph (B), a physical or mental impairment that constitutes or results in a substantial impediment to employment; or (B) for the purposes of sections 701, 711, and 712

---

[9] According to the statute, major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2).

of this title and subchapters II, IV, V, and VII, the meaning given it in section 12102 of Title 42." 29 U.S.C. § 705(9).

The ADA Amendments Act of 2008 ("ADAAA") broadened the definition of disability for the Rehabilitation Act as well as the ADA. As relevant here, Congress sought to override *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 199, (2002), in which the Supreme Court adopted a strict construction of the term "disability" and suggested a temporary impairment could not qualify as a disability under the Act. Congress believed *Toyota* set an "inappropriately high level of limitation necessary to obtain coverage under the ADA." *Summers*, 740 F.3d at 329 (citing Pub. L. No. 110–325, § 2(b)(5)). The definition of disability in the ADAAA, therefore, "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4).

Defendant's objections cite two post-ADAAA district court cases finding temporary impairment does not qualify as a disability under the ADA or Rehabilitation Act, and notes these decisions were affirmed by the Fourth Circuit. ECF No. 83 at 3. However, the Fourth Circuit held, in a published opinion in 2014, "[u]nder the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary." *Summers*, 740 F.3d at 333; *see also* 29 C.F.R. § 1630.2(j)(1)(x) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting . . ."). Accordingly, to the extent Defendant asserts Plaintiff's injury cannot qualify as a disability solely because it is temporary in nature, that contention is rejected.

10

However, Defendant also contends Plaintiff is not disabled because "there is no evidence that the workplace injury limited Plaintiff in any significant way." ECF No. 83 at 4. Work Status reports from Doctors Care limited Plaintiff to "Restricted Duty" on March 23, 2021, noting she could sit often, walk or stand rarely, bend/squat/twist/crawl "none," and climb/work on heights "none." ECF No. 57-15 at 2. Her work level was designated as "light," with lifting/pushing/pulling restricted to ten pounds frequently and twenty pounds maximum. *Id.* A follow up Work Status Report on March 30, 2021, listed the same restrictions. *Id.* at 1. Plaintiff was offered Modified Assignments by USPS, one of which she accepted, reflecting the restrictions imposed at Doctors Care. ECF No. 57-17 at 3.

After implementation of the ADAAA, 29 C.F.R. § 1630.2(j)(1) states, in relevant part,

(i)   The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.

(ii)  An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

Plaintiff testified at deposition "I couldn't walk straight. I couldn't hardly stand up for a long period of time, and I could not wash dishes at home and cook and do the chores around the house. I wasn't good for the post office at the first beginning of the time to do anything." ECF No. 61-18 at 26-27. She asserted she requested "to sit down and put the mail in the boxes, like the

11

doctor told me, and whatever I could do sitting down . . . Not that I want to sit down, but I was in so much pain to stand up to do the other work and lift. I couldn't lift." *Id.* at 61.

Based on this evidence, the court declines to grant summary judgment to Defendant on the issue whether Plaintiff suffered a disability under the Rehabilitation Act. The court cannot find as a matter of law Plaintiff's injury did not substantially restrict her from a major life activity, namely walking, standing, and working, under the broadly construed definition of disability applicable under the Rehabilitation Act after the ADAAA. Defendant's objection as to Plaintiff's workplace injury being defined as a "disability" is denied.

### b. *Direct Evidence of Discrimination and Retaliation*

Defendant next objects to the Report's finding of direct evidence of discrimination and retaliation under the Rehabilitation Act based on testimony from Plaintiff's former co-worker. ECF No. 83 at 5. Plaintiff contends the deposition testimony of the co-worker, Sabrina Bucket, is direct evidence of discrimination and was properly considered. ECF No. 86 at 5.

The testimony at issue here is as follows:

> Q: While you were in -- working at the Columbia office, did you ever hear a conversation between management where they instructed each other not to hire Ms. Buckman or spoke, you know, poorly about Ms. Buckman?
> A: Absolutely, yes, I did.
> Q: Are there any that you remember that you can tell me about?
> A: I remember Tammy's supervisor. I think her name was Ms. Rosalind [Sistrunk] at the time. She came from Orangeburg, and she came to my office. And I thought she was a customer at first, but, when she did come in, she came to speak with my supervisor, who name is Shermel Mungin. And they were talking about Ms. Tammy [Plaintiff], about the injury she sustained, and the supervisor needed some assistance of how to get rid of Ms. Buckman, basically, but to kind of like clean it up on management's side but also to make it seem as if Ms. Buckman either resigned or failed to report to her job, pretty much. I remember that day.

12

ECF No. 76 at 32-33 (quoting ECF No. 61-19, Bucket Dep., at 19-20).

Defendant asserts this is not direct evidence of discrimination because Ms. Bucket "did not testify as to what 'injury' was being referred to nor what disability the USPS employees were discussing." ECF No. 83 at 6. He contends "mentioning an injury that someone sustained does not demonstrate a discriminatory nor retaliatory attitude," but "Ms. Bucket's deposition testimony does not contain a statement from the USPS employees that reflects directly an alleged discriminatory attitude nor any retaliatory animus." *Id.* at 6-7 (cleaned up).

This argument, however, is too narrowly focused. It is clear from the excerpt cited by the Report that not only did the USPS managers reference Plaintiff's injury, but also that "the supervisor needed some assistance of how to get rid of Ms. Buckman, basically, but to kind of like clean it up on management's side but also make it seem as if Ms. Buckman either resigned or failed to report to her job." ECF No. 61-19 at 20.  Further, Ms. Bucket went on to testify:

> Also, I do remember the supervisor that belongs to Orangeburg, Ms. Rosalind, telling my supervisor that she was trying to get rid of Ms. Tammy and that Ms. Tammy was hit with a pallet jack, and she received statements from other employees. And she already alert the other employees that they would not get fired, so the statements were bogus. They were lies. They was to cover up the truth just to get rid of Ms. Tammy, to make it look like she's liable and at fault and that she's accident-prone.

*Id.* at 21-22 (errors in original).

Based on these statements, the court agrees a jury could find this conversation between the two supervisors, overheard by Ms. Bucket, is direct or indirect evidence of discrimination and/or retaliation. Although it does not directly mention Plaintiff's prior EEO activity, it is evidence, if

13

the statement is believed, from which a jury could find Plaintiff's USPS supervisor intended to "get rid of her" for improper reasons. Accordingly, this objection by Defendant is overruled.

### c. *Causation*

Defendant objects to the Report's conclusion Plaintiff has established a prima facie case of retaliation under the ADEA and the Rehabilitation Act. He asserts there is no evidence in the record of causation via recurring retaliatory animus when the Report points to only one conversation a co-worker of Plaintiff's overheard in 2021. Plaintiff's reply does not discuss this objection.

Regarding causation, the Report found the temporal relationship between Plaintiff's formal EEO Charge signed in January 2021 and the April 26, 2021, Notice of Removal, to be insufficient to show causation alone. ECF No. 76 at 25-26. A three-month gap, as is established here by viewing the facts in the light most favorable to Plaintiff,[10] has been found to be insufficient alone to imply causation. *See Roberts v. Glenn Indust. Grp., Inc.*, 998 F.3d 111, 126-27 (4th Cir. 2021). However, the Report cited *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007), which noted evidence of recurring retaliatory animus can establish causation even in the absence of temporal proximity based on continuing retaliatory conduct and animus directed at a plaintiff. Here, the Report cites two suspensions and the conversation overheard by Ms. Bucket as evidence to show causation for purposes of establishing a prima facie case sufficient to defeat summary judgment.

---

[10] Defendant characterizes this as the October 2020 EEO Charge, based on the date of Plaintiff's initial contact with an EEO counselor. Plaintiff, however, uses the date she signed the formal Charge as the operative date for considering temporal proximity.

14

Defendant focuses on the deposition testimony from Ms. Bucket, asserting it is insufficient to show "recurring retaliatory animus." ECF No. 83 at 7. However, the Report also references the two suspensions in October 2020 and January 2021. ECF No. 76 at 27. Although the Report notes the court is "far from convinced that these two suspensions and their timing alone provide a causal link or pattern as contemplated by *Lettieri*," those, combined with Ms. Bucket's testimony, result in the Magistrate Judge recommending denial of summary judgment regarding causation. *Id.* at 27-28. The court agrees with the Report the timing, suspensions, and testimony of Ms. Bucket are sufficient to survive summary judgment on this issue. Defendant's objection is overruled.

        d.   <u>Pretext</u>

Next, Defendant asserts the Report's finding a jury could determine Defendant's proffered reasons for terminating Plaintiff were pretext, is erroneous. Defendant contends he provided "legitimate, non-discriminatory, and non-retaliatory reasons for why Plaintiff was terminated from her employment at USPS," including her performance issues, failure to report to work, failure to provide documentation to support unscheduled absences, and failure to follow instructions. ECF No. 83 at 8.

Plaintiff asserts she is not required to establish pretext because there is evidence in the record showing Defendant's actions were not free from any discrimination. ECF No. 86 at 6. She argues in the alternative, to the extent necessary, she has also set forth evidence showing a question of fact as to whether Defendant's purported reason for termination was pretext for unlawful discrimination and retaliation. *Id.* at 7.

Defendant acknowledges the Report cites two pieces of evidence of pretext – Ms. Bucket's testimony about the conversation and Plaintiff's deposition testimony that she attempted to provide medical records for her workplace injury, but they were not accepted by her supervisors. However, he contends those were both after her workplace injury in 2021. Defendant contends Plaintiff has shown no evidence of pretext for unscheduled absences in 2019.

The court finds this argument unavailing. The Notice of Removal sent to Plaintiff charges unsatisfactory attendance; however, it does not reference any 2019 absences. Instead, it focuses on Plaintiff's purported undocumented absences in March – April 2021. ECF No. 57-19. Plaintiff contends she attempted to provide documents for this absence, raising an issue of fact. Accordingly, the court finds Plaintiff's evidence of pretext relevant to the reasons given for her removal. Defendant's objection is overruled.

   e. *Front and/or Back Pay*

Finally, Defendant contends Plaintiff is not entitled to front or back pay as a matter of law, contrary to the Report's recommendation, as Plaintiff did not seek employment for nearly two years after her termination from USPS. ECF No. 83 at 9-10. Because she did not attempt to mitigate her damages by applying for jobs prior to February 2023, Defendant argues she forfeited her right to back pay during that period.

Plaintiff asserts a determination on the issue of damages would be premature at this point, but there is evidence Plaintiff made reasonable attempts to mitigate her damages, so front and back pay should be considered at the appropriate time. ECF No. 86 at 8.

16

An allegedly improperly dismissed employee may not remain idle and recover lost wages from the date of discharge. The employee must make a reasonable effort to find other suitable employment. *See O'Neal v. Gresham*, 519 F.2d 803, 805 (4th Cir. 1975); *see also Wagner v. Dillard Dep't Stores, Inc.*, 17 F. App'x 141, 153 (4th Cir. 2001) ("A plaintiff who remains idle instead of seeking employment forfeits his right to back pay for the period during which plaintiff did not seek employment."). After an unlawfully discharged employee produces evidence in support of her claim for back pay, contending she was unable to find comparable work, the employer has the burden of showing she did not exert reasonable efforts to mitigate her damages. *Edwards v. Sch. Bd. of City of Norton, Va.*, 658 F.2d 951, 956 (4th Cir. 1981).

Here, Defendant asserts Plaintiff made no effort to search for jobs at least until her deposition in February 2023, nearly two years after her termination in May 2021. ECF No. 83 at 10 (citing Buckman Dep. at 86). Plaintiff acknowledged at deposition she had not applied for any jobs since her termination in May 2021. ECF No. 61-18 at 85-86 ("Q. Ms. Buckman, are you currently employed? A: No, ma'am. . . . Q. Are you currently seeking employment? A: Well, I want to seek employment, but I want my job back. . . . Q. Have you – since you were terminated on May 28th of 2021, have you applied for any other jobs? A: No, ma'am.").

Plaintiff agrees with the Magistrate Judge a determination of front and back pay would be premature at this time due to factual issues. ECF No. 86 at 8. She relies on the testimony of her expert witness, Debbie Caskey, who conducted a vocational evaluation and assessment of Plaintiff and concluded there were "no employment opportunities directly transferable that would provide reasonable gainful employment that would allow her to recapture her previous wage." ECF No. 86

17

at 8-9 (citing ECF No. 61-22 at 58). Ms. Caskey also testified Plaintiff was currently applying for jobs at that time, without success. ECF No. 61-22 at 62-63.

The court agrees there are issues of fact as to Plaintiff's mitigation of damages via applying for jobs as of October 2023, when Ms. Caskey was deposed. However, between May 2021 and February 2023, the evidence is undisputed Plaintiff was not employed and had not applied for any jobs, and thus failed to mitigate her damages. While issues of entitlement to front or back pay from February 2023 to present is reserved until after liability is determined, the court finds Plaintiff cannot recover front or back pay for the period May 2021 to February 2023. Defendant's objection is sustained for that time period, but overruled for the period from February 2023 (after Plaintiff's deposition) to present.

### 5. Conclusion

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, Defendant's objections and Plaintiff's reply, the court agrees with the Report, and therefore adopts and incorporates the Report in this Order except for the issue of front/back pay for the period May 2021 to February 2023. Defendant's motion for summary judgment is granted in part and denied in part, as follows. Summary judgment is granted as to Plaintiff's claims for Title VII retaliation (4) and hostile work environment (5), ADEA claims of discrimination (1) and hostile work environment (3), and Rehabilitation Act claim for hostile work environment (7), as well as Plaintiff's request for punitive damages, and these causes of action are dismissed with prejudice. In addition, summary judgment is granted as to Defendant's assertion that front and back pay are not available for the period May 2021 to February 2023, but

18

denied for the period February 2023 to present. Summary judgment is also denied on Plaintiff's claims for ADEA retaliation (2), Rehabilitation Act discrimination (9), retaliation (8), and failure to accommodate (6).

This case will now proceed to trial on Plaintiff's claims for ADEA retaliation and Rehabilitation Act discrimination, retaliation, and failure to accommodate. Jury selection will be held January 8, 2025. An amended scheduling order with other pretrial deadlines will be entered contemporaneously with this Order.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
Senior United States District Judge

Columbia, South Carolina  
September 26, 2024